VICE CHANCELLOR

**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: January 9, 2015
Date Decided: January 12, 2015

Seth D. Rigrodsky, Esquire
Brian D. Long, Esquire
Gina M. Serra , Esquire
Jeremy J. Riley , Esquire
Rigrodsky & Long, P.A.
2 Righter Parkway, Suite 120
Wilmington, DE 19803

Robert S. Saunders, Esquire
Arthur R. Bookout, Esquire
Michael J. Alonso, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19801-0636

Anne C. Foster, Esquire
Christopher H. Lyons, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King St.
Wilmington, DE 19801

Re: *Parsons v. Digital River, Inc., et al.*
Civil Action No. 10370-VCG

Dear Counsel:

On December 31, 2014, I heard oral argument on the Plaintiff's Motion to Expedite. At that time, I denied the Plaintiff's Motion as to the *Revlon* claims raised therein, but I deferred ruling on the Motion as it related to the Plaintiff's disclosure claims. Instead, I allowed the Plaintiff to submit a few disclosure claims in a supplemental brief, together with case law and an explanation of why such

1

claims would be material to stockholders.[1] The Plaintiff's Motion initially raised upwards of 30 disclosure claims, approximately five of which the Plaintiff highlighted during argument. The Plaintiff's supplemental briefing focused on two. Following my review of that brief, in addition to the Defendants' responses, I am denying the Plaintiff's Motion to Expedite with respect to the remaining claims.

To prevail on a motion to expedite, a plaintiff must demonstrate "a sufficiently colorable claim and show a sufficient possibility of threatened irreparable injury, as would justify imposing on the defendants and the public the extra (and sometimes substantial) costs of an expedited preliminary injunction proceeding."[2] This Court has observed that "the optimal time to bring a disclosure claim in connection with a proposed merger, or in a like context where the company requests shareholder action or approval, is before the stockholder vote is taken and the deal closes," thus highlighting the value of expedition in disclosure cases.[3] That observation notwithstanding, I note that if a meritorious disclosure claim is pursued post-closing, a quasi-appraisal remedy may be available.[4]

---

[1] *Parsons v. Digital River, Inc.,* C.A. No. 10370-VCG, at 32–33 (Del. Ch. Dec. 31, 2014) (TRANSCRIPT); *see, e.g., Bleymeyer v. Monogram Sciences, Inc.,* at 31:20–32:20 (Del. Ch. July 9, 2009) (TRANSCRIPT).

[2] *In re 3Com S'holders Litig.*, 2009 WL 5173804, at *1 (Del. Ch. Dec. 18, 2009) (alteration omitted).

[3] *In re SunGard Data Sys., Inc. S'holders Litig.*, 2005 WL 1653975, at *2 (Del. Ch. July 8, 2005).

[4] *See, e.g., In re Orchard Enterprises, Inc. S'holder Litig.*, 88 A.3d 1, 42–47 (Del. Ch. 2014).

In her supplemental submission, the Plaintiff helpfully emphasized what I assume are the two most significant of her three dozen disclosure claims,

> relating to the failure to provide material information as to (i) what occurred during the go-shop period; and (ii) the basis for CEO Dobson's statement to the Board that he "believed it likely that Siris would be interested in retaining members of senior management post-closing," including when he formed such belief or any communications concerning management retention prior to the Merger Agreement.[5]

At the times of the Plaintiff's Motion, oral argument, and the filing of her supplemental brief, the Company had not yet filed its Definitive Proxy. That was filed on January 8, 2015, at which time the Company disclosed, in detail, information about the go-shop period, including the number of parties involved, indications of interest, and confidentiality agreements entered.[6] Therefore, I find the Plaintiff's claim regarding the go-shop period to be moot.[7]

I turn, then, to the disclosure claim regarding management retention. The Proxies—both Preliminary and Definitive—provide: "Mr. Dobson also confirmed that neither he nor other members of senior management had discussed any arrangements with Siris regarding potential post-transaction employment by

---

[5] Pl.'s Supplemental Br. in Further Supp. of Mot. for Expedited Proceedings at 1. The Plaintiff asserts a third disclosure claim, involving Morgan Stanley's "comparable companies" analysis in its fairness opinion; the Plaintiff no longer seeks expedited discovery with respect to this claim, instead asking that it proceed to a preliminary injunction hearing on the current record.

[6] *See* Digital River Defs.' Supplemental Br. in Opp'n to Pl.'s Mot. for Expedited Proceedings at 6; Alonso Aff. Ex. 10 at 10–11, 87–89.

[7] To be clear, to the extent that she is seeking further disclosure regarding the go-shop period, the Plaintiff has not demonstrated a remaining colorable claim. She declined the opportunity to file a reply brief, post-Definitive Proxy.

Digital River, although he believed it likely that Siris would be interested in retaining members of senior management post-closing."[8] The Proxies also disclosed that the Digital River Board had directed management not to discuss employment with Siris prior to execution of a merger agreement,[9] that no such discussion had taken place,[10] and that no employment agreements had been entered into as of the time of either proxy.[11] The Plaintiff contends, however, that it is material to know "the basis for Dobson's belief, when he formed it, and any communications regarding management retention."[12]

The Plaintiff points to this Court's decision in *In re Micronetics, Inc. Shareholder Litigation*, where Vice Chancellor Parsons noted that in "disclosing management's . . . expectation of continued employment with [the buyer], [the proxy] may be neglecting to disclose pertinent parts of that full story."[13] The Defendants argue that *Micronetics* is not helpful to the Plaintiff here because, in that case, the proxy referenced actual employment agreements and definitively stated that management would continue their employment with the company.[14]

---

[8] Alonso Aff. Ex. 3 at 38 (Preliminary Proxy); *see also* Alonso Aff. Ex. 10 at 38 (Definitive Proxy).

[9] *See* Alonso Aff. Ex. 3 at 37; *see also* Alonso Aff. Ex. 10 at 37.

[10] *See* Alonso Aff. Ex. 3 at 38; *see also* Alonso Aff. Ex. 10 at 38.

[11] *See* Alonso Aff. Ex. 3 at 9; *see also* Alonso Aff. Ex. 10 at 9.

[12] Pl.'s Supplemental Br. in Further Supp. of Mot. for Expedited Proceedings at 4.

[13] C.A. No. 7626-VCP, at 16:8–11 (Del. Ch. July 23, 2012) (TRANSCRIPT); *see also* Pl.'s Supplemental Br. in Further Supp. of Mot. for Expedited Proceedings at 4.

[14] *See* Digital River Defs.' Supplemental Br. in Opp'n to Pl.'s Mot. for Expedited Proceedings at 10–12.

Further, as these Defendants point out, this Court has noted that although a fact was found material in one case, such a finding does not "endow that issue with talismanic properties or reduce it to a magic word forever after."[15]

Here, the stockholders were informed that Dobson believed, and disclosed to the board, that Siris would offer senior management continued employment, but that he had not discussed these matters with Siris; that the board directed management not to speak with Siris about such employment, pre-agreement; and that no such discussions took place. This gives stockholders the ability to consider management's incentives and provides all information likely to be material to stockholders. It does not implicate the concern, addressed in *Micronetics,* that benefits flowing to management from a merger with a specific buyer, material to stockholders, remain undisclosed. Attempting to raise the specter of such undisclosed material incentives, the Plaintiff resorts to suggesting that the disclosures are simply not credible: "[The Court] should not . . . assum[e]" the truth of the statement in the Proxies that there had been no discussions with Siris regarding management retention; "[e]ven if this is true . . . , [D]efendants have avoided representing that there have been *no communications* with Siris regarding management retention."[16] The Plaintiff, however, offers no factual basis for this

---

[15] *In re Midas, Inc. S'holder Litig.*, C.A. No. 7346-VCP, 18:1–4 (Del. Ch. Apr. 12, 2012) (TRANSCRIPT).

[16] Pl.'s Supplemental Br. in Further Supp. of Mot. for Expedited Proceedings at 6 n.3.

speculation.  This is not a rifle shot at a clear disclosure violation, or even a wing shot at a passing colorable claim.  It is a pot-shot, and pot-shots do not provide grounds to expedite discovery in way of a motion to enjoin a merger.  In other words, it does not appear that there is any material information to be disclosed regarding post-transaction retention of management.  The disclosure violation posited by the Plaintiff is speculative; thus, the chance of receiving injunctive relief based on it is low, and I do not find that the value of any potential disclosure to stockholders outweighs the cost of expedition.

Accordingly, the remainder of the Plaintiff's Motion to Expedite is denied. To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.


Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III

6